On the first of July, 1831, the Chief Justice delivered the following opinion of the court, in response to the petition for a rehearing.
This case has been re-argued, and re-considered; and the opinion will remain unaltered.
So much of the petition as insists that the chancellor had a right to decree a specific restitution of the commonwealth paper will not be noticed, except by the passing remark that, though the restoration of the thing when practicable, may be proper, a restitution of kind would be unusual at least.
We may admit that McChord is not estopped to deny Bodley’s title, and may not be compelled to restore to him the possession, unless he “entered” under that title or obtained, the possession from Bodley.
But .we maintain, that McChord did enter under Bodley, and did obtain the possession from him. This is the deduction of fact, as well as of law.
1st. As to the fact, Bodley had a claim to a large ■tract of land; and there is no intimation in this record *483 that any o' her person had any other or adverse claim to the same land. A brother of old David McChord bought a part of the tract from Bodley, and settled on it, under Bodley’s title, in 1804. In L805, David Mc-Chord, without any claim of title, settled near his brother; and shortly afterwards made a contract with Bodley for the title. lie never asserted any other claim than that derived from Bodley.
One who enters on land without claiming any title or manifesting a hostile intention will be ‘deemed’ to have entered under, and in subordination to the title of the true owner.
Vendee of land, who entered under an executory-contract of purchase, will not be permitted to deny title of vendor or to withhold restitution, although the contract has been rescinded by the chancellor.
Under whom then did he enter? His entry was not hostile; his possession was not adverse. He must be presumed to have known that Bodley claimed the land, and that his brother’s home was protected by Bodley’s title. The inference is fair, and almost conclusive, that he entered under Bodley’s title, with the intention of purchasing from him, as he did, or perhaps, in consequence of a prior agreement for the purchase. It is true, that some of the witnesses swear that they do not know that 1). McChord entered under Bodley, but the facts uncontradicted, show, (we think,) that he did so enter; see Jackson vs. Cuerden, II Johnson’s cases, 353.
2d. As to the law. The cases cited in the opinion ’and many others (sparsim) establish, incontrovertibly, the doctrine, that a person who enters on land without claiming any title or manifesting a hostile intention, must be “ia-m rP to have entered under, and in subordination to the title of “the true owner.” This has not been controverted, and will not be, as we suppose.
But it may be said, that Bodley cannot be benelitted by this doctrine of the law, unless he had proved that he was the true owner.
To this, we reply, that he has proved that he was the true owner. If McChord had never made a contract with him, Bodley could not have evicted him-without positive proof of title. But McChord is estop-ped by his contract to deny Bodley’s title.' It is true, that the contract has been rescinded by the decree. But still the fact appears that there was a contract and that McChord held the land under and in consequence of it. The estoppel cannot be affected by the rescisión.
A person, who entered under an executory contrae^ for purchase, will not be permitted to deny the title of the vendor, or to withhold restitution, merely because the chancellor has rescinded the contract; the chancel *484 lor will not rescind without decreeing restitution; and;, although a. rescisión be decreed because the vendor fa¡]e(j (;0 ghow a perfect tille, the parties m ist be placed in slain quo; and as to the question of restitution rj glit of the-vendor cannot be controverted by a ven-^ee who.sought the rescisión; If, in conssqmnce of his contract, McChord must be consikrzd as having entered under Bodley, then, of course, the rescisión of the-con-^rac(; cari have no more effect on the right to restitution, than it would have, if McChord had entered after the date of the contract. If McChord had entered after contract? fact that he made such a contract, would be admissible (even though the contract had been rescinded,) to prove that he entered under Bodley. For the same reason, if the facts and contract in this case can have the effect of showing, by construction of law or otherwise, that McChord entered, or must ube deemed” to have entered under Bodiey’s title, the contract, though no.w rescinded, is as admissible and as effectual to show the entry and the character of the possession as it would be if' the entry had been made after its date. If, in the one case, (because it is now nullified by decree,) it would be insufficient to prove bow McChord entered and held, it would be equally ineffectual in the other; and vice versa. The petition complains that whilst we affirm the decree, became Bod» ley has no title, we direct restitution, because he has title» This complaint may he as well made in all cases of re-scisión for want of proof of title. The contract is rescinded because the vendor fails to exhibit satisfactory documents of title. But the possession should be restored because the vendee, having entered under the vendor, will not be permitted to withhold restitution by denying the tille of his vendor.
Where ven-dee enters under an exeou-tory contract chancellor ’ willnoirescind th'thout de0< creeing reati-iution of the-land to vendor
The only question then, in this case, is, did McChord enter under Bodley? And this we consider, as settled by the facts and the law. On the question of estoppel on similar facts (in ejectment,) the supreme court of New York said, “the defendant being in possession when the agreement was entei'ed into, can make no difference. He was in as a mere naked possessor, and must be considered in the same light as if he had entered under the agreement;” (Jackson vs. Ayres, XIV Johnson, 225.)
*485 If Bodley had sued McChord in ejectment, would not the latter have been e.topped to deny the title of the former? It must be admitted that he would have been, unless the cases which wc have cited, and the n onerous authorities to which they refer, are all wrong. We k ow of n) opposing au'hority. But McChord would not have been estopped to deny Bodley’s title (in an ejectment,) unless he entered under that tide. And, therefore, as he would have been so estopped, he must hive, entered or be considered as having entered under Bodley. And consequently, according to the petition itself, it seems to follow inevitably, that Bodley is entitled to restitution, because, either in fact or in law, the entry of McChord was under his title, and his possession has, for more than if) years, been protected by that title, and that alone. Me Jhord has not attempted to prove that any fraud was practiced by Bodley; and it does not appear that any person has filie to the land, unless Bodley has. A majority of the court can, therefore, see no reason why Bodley should not be put into possession of the land.

Judge Underwood

not concurring in opinion with the majority of the courts in this case, delivered his ovni opinion, as follows.
The depositions of three witnesses only, are taken in this cause. Each of them prove that David Mc-Chord, the father of the defendant in error, settled on the land and made improvements, one, two or three years before he contracted to purchase from Bodley. Two of the witnesses prove that McChord entered in January, 1803. The written contract with Bod-ley bears dale in July, 1308. The other witness states that David McChord sef tied on the land in 1806,. as “nea:ly as he can recollect;” that he first made a parol contract with Bo Iby, and afterwards expressing his fears that Bodley might sell out over him, the latter reduced the contract to writing. But this witness who was not favorable to Bodley, expressly states that Mc-Chord lived upon the land one or two years before he made any kind of contract with Bodley, and that he “did not settle under said Bodley.” David McChord sold the land to his son, William, the defendant in error. In 1834, Bodley bound himself, in writing, to convey *486 to said William one hundred acres of land, including the place where “David McChord lately lived.” William McChord filed his bill to enjoin a judgment for part of the purchase money, and called for the production of Bodley’s title, who showed none, and therefore, the circuit court set aside the contract. Under this State of case, the ques1 ion is, whether the circuit court erred in refusing to decree (not a restoration of the possession, for Bodley never had that) a surrender of the land to Bodley.
If David McChord, the original improver, was a mere squatter, for aug.it that appears in this record, he had as much right and title to the land as Bodley. I cannot say that Bodley has any title whatever, when-he never had possession, and exhibited no patent,, and made no proof that he claimed or held under those who had title or possession. There is no pretext then-for compelling McChord to surrender the land, unless he is estopped to deny Bodley’s title. I do not believe he is estopped by any principle of law to make-the denial. Estoppels are of three kinds, matter of record,, matter in writing, and matter in pais; see Thomas’ Coke upon Littleton, III, 430. Now, I admit, if it had been shown that the McChords entered under Bodley’s claim, they might have been estopped by that, as matter in pais. But it is clearly shown that no such entry was made. If then, there is any estoppel here, it results from the contract in writing, which once, subsisted between the parties, but which the court has annulled by its decree. I acknowledge, that so long as this contract remained in force, it operated as an estoppel.. But when it was overruled, I contend that it had, and could, thenceforth, have neither retrospectively or prospectively, any operation whatever, upon the rights of parties, in regard to the possession of the land, or to ownership over it. So much of the opinion delivered as gives the effect of an estoppel, to the written contract, af er it has been cancelled by the decree of the court, is to my mind, the establishment of a new princi-pie, not only without the sanction of any adjudication, but in opposition to the principle of the cases relied on in support of it. The case of Jackson on the demise of Brown and others vs. Ayres, XIV Johnson, 224, was an ejectment maintained by the lessor, upon *487 an executory contract. The defendant was in possession when he entered into the contract, and the court very pioperly hold, that he was estopped. But both_1_ the inferior and superior court, in that case, held, that the defendant might show, if he could, that he had been deceived or imposed on, in making the agreement. Suppose that had been shown, what consequence would have followed? Certainly then the estoppel would have been avoided. The offer to permit the defendant to show that the agreement was unduly obtained, could have had no possible effect, but to avoid the estoppel. The case of Peddicord vs. Hill, IV Mon., 374, shows that estoppels may he avoided in law or equity, by proof of fraud. Now 1 do not pretend to say, that Bodley has been guilty of actual fraud. Indeed 1 am inclined to think he has acted honestly and liberally. He says he has title, but it would cost him more to show it than • his claim against McChord is worth. This may all be true, but a court of justice cannot act upon such statements from interested parties. It must betaken, that Bodley has sold land to which he has no title, and this, in the estimation of law, is a fraud, and it is for this very reason, that the court has annulled the contract. Here then the estoppel, which would have existed so long as the contract remained in force, and which resulted from the wilting', is entirely avoided. As there is no proof that McChord entered' under Bodley’s title, and which might have been shown, independent of the written contract, as was decided in Hamilton vs. Taylor, Lit. Select Cases, 444, there is no estoppel by matter in pais. It will not do to say, that when a man is once estopped, he must remain so forever; Chiles vs. Bridges, Select Cases, 428, is an authority in point to the contrary.
It therefore appears to me, that the effect of the opinion is this, it was wrong in Bodley to sell lands to which he had no right, and consequently, the. contract was properly rescinded.; but as Bodley succeeded in making McChord believe he had title, and thereby induced him to enter into the contract, he ought now to surrender the possession of the land, notwithstanding the contract is rescinded, and although it does not appear that Bodley has the shadow of a title. Against such a doctrine, I feel it to be my duty to dissent.-' I cannot reward Bodley for selling land to which he has no title.